Good morning, Your Honors. May it please the Court, my name is Charles Sharpley. I represent Appellant Kumtat Limited. If possible, I would like to reserve five minutes for rebuttal. On this appeal, Kumtat asked the Court to reverse two orders of the District Court. The first is the District Court's order expunging Kumtat from its pendants. The second is the Appellant Arbitration. I know we've raised some jurisdictional issues, but on the first point, explain to me, even if we have jurisdiction over the appeal generally, why we would have jurisdiction to reverse the order expunging the pendants? Judge Horwitz, you would have jurisdiction on one of two bases. The first would be pendent appellate jurisdiction. You would have pendent appellate jurisdiction under SWINT and under STRITE v. County of Los Angeles. Discretionary jurisdiction? Yes, Your Honor. Okay. Yes. But the standard is met. The standard under STRITE being placed. Is it really? Because on the main case, your argument is that Judge Arendt might not be sending you to arbitration, right? No, Your Honor, that's not correct. We're arguing that Judge Arendt, because he held that the review and approve clause was met in this precedent. So that when you get to the grounds, your appeal was in order of denying arbitration, correct? Yes, Your Honor. Okay. So the relief you seek is to be sent to arbitration. Yes, Your Honor. Okay. That's quite different, isn't it, than whether or not there was a sufficient basis behind your list pendants to allow it to remain. The judge on the list pendants said, I've looked at the claim and you don't really have a very good one. You're not likely to win and therefore I'm expunging the list pendants. That's quite different from whether you're entitled to arbitration, isn't it? Superficially, Your Honor, but not actually because what the judge said in both orders was that there's no enforceable contract and the grounds on which the court ruled were identical. The court held that the review and approve clause was a met condition precedent in both orders and I'll let the... What is your basis in the jurisdiction? Explain that to me. For the arbitration... Why do we have jurisdiction? Your Honor, the answer is the same. You have jurisdiction on one of two bases. You have jurisdiction over the arbitration order under 9 U.S.C. 16... Well, that's the only thing you seek of us. You ask of us to send this case to arbitration. That's correct, Your Honor, but if the court sends the case to arbitration, it necessarily resolves the expungement order as well. Does the arbitrator have any power to expunge the list pendants? The arbitrator may not, Your Honor, but you do and you do... So did the district judge. My question is a different one. So I'd like to know where's our jurisdictions flow from, stem from? Well, on the arbitration order, Your Honor, it flows from 9 U.S.C. section 16. You also have discretion to... So you don't claim that this case arises under the federal arbitration, am I correct? That's correct, Your Honor. All right. So if we don't have jurisdiction under the federal arbitration act, how can we possibly have jurisdiction as a federal court? As the 5th Circuit held in the Western Security Bank case, Your Honor, and as the 10th Circuit held in Conrad, the court could acquire jurisdiction in one of two ways. First, as the court indicates, the movement or the appellate could have explicitly referenced section 3 or section 4 of Title IX in its motion papers. Alternatively, though, Your Honor, as the court held in both cases, if it appears to the court that the relief sought is arbitration and solely arbitration, that is arbitration and not a judicial remedy, then the court can take jurisdiction of an involuntary appeal, even if the federal act was not referenced. I have difficulty with that. If you look at 9 U.S.C. section 16, it talks about appealing from an order denying an application under section 206 of this title to compel arbitration. So it appears to me that whatever you could have alleged, unless it actually did allege a federal uh right to arbitration, I'm not sure why you get that from here. Well, Your Honor, I believe that the court held in Western Security Bank that certainly one way to get there was to directly allege a motion under section 3 or section 4 or under section 206. Which you did not. I didn't do that. No, of course not, Your Honor, but the point of the case of Western Security, as I understand it, and Conrad as well, was that if you don't do that, but you do seek solely relief that would be available under the FAA, that is arbitration and not any judicial remedy, that the court can assume jurisdiction. Let's assume that, let's assume for a second you're correct in that statement. What do we do with a party that says, that disclaims seeking relief under the Federal Arbitration Act? You're looking at your motion for state benefit appeal and you're trying to distinguish the Britain case and the first sentence says Britain was a case brought under the Federal Arbitration Act. In contrast, Comtat's motion to compel arbitration was made pursuant to citing California law and it's appeal from the time that motion is taken pursuant to California law. We don't have jurisdiction under California statute. I was going to say the other, the other thing I would point to is your own motion to compel arbitration, which starts the very beginning of the argument by saying California law governs. That is your entire pitch, it seems to me, in the underlying motion. Your Honor, I could not disagree with that. I wouldn't have to characterize it as a pitch, but the fact was that we had to move under California law because the arbitration provision in question mandated the application of California law. I'm saying even if that's true, you later on in the motion for state disclaim reliance on the Federal Arbitration Act. You say that case can't control because that one was brought under the Federal Arbitration Act. We're moving under California law and I suspect there may be a good reason for that. I'm not sure on the merits that this contract is subject to the Federal Act in any event since it involves real estate, but put that aside. That's a merits question. It's a question that, you know, we have to get to if we had appellate jurisdiction. But once you say, I don't want the Federal Act, I only want the California Act, how is your appeal brought under the Federal Act? Your Honor, as the 10th Circuit... Now, 10th Circuit said if you're silent and the case appears on its face to fit within the Federal Act, then I'll exercise jurisdiction. You weren't silent. You were adamant. I don't know if we should... I thought you said that you were not filing under the Federal Arbitration Act. We did not, Your Honor. That's absolutely correct. That's what we said. Am I correct? No, no. You are absolutely correct, Your Honor. We were required by the arbitration... Thank you for that. Now look, if you're not filing under the Federal Arbitration Act, thank you for that answer. All our research indicates that all the circuits that have looked at this, the 3rd, 7th, the 10th, have all held that we lack jurisdiction to hear appeals from a motion filed under state law to compel arbitration. You are filing under California law to compel arbitration. Now, it seems to me, QED, you're out of court, but tell me why I'm wrong. Two grounds for my belief that you're wrong, Your Honor. The first is that neither Western Security Bank nor Conrad required any reference to the Federal Arbitration Act. It's true that in both cases, the appellant was silent as to the basis of the court's jurisdiction. But doesn't that make a big difference? Because if you're silent and you just say, we want to arbitrate, you have to draw the inference in favor of the moving party and in favor of jurisdiction. So if it's possible, you can construe silence that way. But here, you weren't silent. You said state law, state law, state law. And so I don't know how we can shift to another, Your Honor, as far as silence is concerned. And the intention of the movement in Conrad, there wasn't even a motion to compel arbitration. There wasn't even a motion to stay. It was a motion to dismiss under Rule 12. So I would submit, Your Honor, that we're ahead of the movement in Conrad because at least here, we did move to compel arbitration and move to stay judicial proceedings pending arbitration through under state law and not under the FAA. But let me just say, Your Honor, that if the court declines to accept jurisdiction under Section 16, the court has discretion to take jurisdiction of this case as a petition for writ of mandamus. I believe that the Bowman factors are met, and I'm happy to discuss that if the court would like. And I would urge the court to do that because sending this back to the district court for a motion for summary judgment and a final order simply postpones the day that we return. One of my concerns with that is, if you're the one who sought to stay and appeal, this would have been all over. The district judge was pretty clear about what he was going to do, right? Yes, Your Honor. He was going to grant summary judgment against you. And if we had not gotten a stay pending appeal, you'd have, by any stretch of the imagination, a perfectly appealable order. I'm not sure the Bowman factors come into play when the emergency is caused by you staying the action for two years. Well, Your Honor, I think that I'd have to take issue with that. I think that certainly we are prejudiced by being forced to go back and litigate, and that is a form of prejudice that, under Miller v. Gammie, cannot be resolved by a subsequent appeal. But we do not have a present right to direct appeal. So those are the first two Bowman factors. The third being that the district court clearly erred. I just submit— Tell us why we took you off track on that. Tell us why you think the court was wrong on the merits of its refusal to issue arbitration. In a nutshell, Your Honor, the court was wrong because it failed to consider the actual terms agreed to by the party in a couple of specific ways. What the court thought was that the view— Let me be straight up with you. I've got a problem when you start talking about the terms the parties agreed to. From my reading of this, maybe I'm being too candid, but I don't see the contract. The parties don't have a contract. How could the district court have erred in concluding there was a contract when there never was a meeting in the minds of the key element of the matter to win the price? Your Honor, I think that there are numerous cases, including in my side graph, the Ninth Circuit Bankruptcy Appeal case, in which there was an appraisal contingency and the court held that, of course, parties agree on the price initially, as we did here. But after the contingency is removed—in that case, an appraisal contingency here or an approval contingency—the parties naturally may renegotiate a price in retrospect. You didn't agree on a price. You agreed on a condition price, and the condition was never met, and therefore, there was never an agreement. Well, Your Honor, we agreed on a conditional price subject to a procedure, to a negotiation procedure that was spelled out in the contract in great detail that would enable the parties to reach the agreement if there was a request for a price reduction, which is there was— You requested $500,000, a fairly substantial price reduction of $500,000. Correct. In the context of $40 million. It's real money. Not substantial. To me, it's real money. It's half a meter, Your Honor. Half a million bucks. And the other side said, no, thank you. We're done. Were they required to accept your number? Yes, they were, Your Honor. They were absolutely required, in other words— Not to accept, Your Honor, but to negotiate. But they had been negotiated. So, I mean, under your theory, they would have had to negotiate forever. They had been. Another six days, Your Honor. Another six days, Judge Mayweather. Paragraph 21B of the agreement provided that if one of the parties, the buyer specifically, made a request for a correction or that the seller take any action not already agreed to, there was a defined process to resolve. And that's the inspection clause. No, Your Honor, that's paragraph 21B, which says that if such a request was made, any action is permitted. Right. You can ask for anything. And so the procedure that was to be followed was that the seller had three days in which to decide whether to accept or reject the request. If the seller accepted the request, the buyer was obligated to remove the contingency. If the seller rejected the request, the buyer had the option of waiving the contingency or serving a notice of cancellation. The procedure was plainly set out. And the right of Crumdod to request that price correction was also plainly set out, as was Crumdod's right to review and approve every matter that had an impact on the value or the desirability of the property. So that when the district court held that there was an unmet condition precedent or that the contract was not sufficiently specific, it failed to take into account that we had the right to review and approve and the right to request a correction. And your position is that paragraph 21B applies to this, to the inclusion and exclusion list? Certainly, Your Honor. The inclusion and exclusion list was merely a subset of the approval contingency set out in 14A. Okay. We understand your position. We asked you a lot of questions. We will give you a minute for a bubble on the time. Thank you very much, Your Honor. And please, the court. My name is Jeffrey Fillarope. I represent the appellee. I have two things that I'd like to cover. One is the supplemental briefing on your jurisdiction, and the other is this completely separate issue, but the pendant jurisdiction issue. First, with respect to the supplemental briefing, you had requested that we address three cases. The Tenth Circuit case in KCOM, the Third Circuit case in Airport Express, and the Seventh Circuit case in Sherwood. In our supplemental briefing, we really focused on that Tenth Circuit case, KCOM, and we made the argument that that case controls. And when you apply the reasoning in KCOM in this case, it shows that there's no jurisdiction. What if they decided in their request for arbitration? What if they simply said, we want arbitration? Well, and the court said no, would there be appellate jurisdiction here? Well, that's an interesting question. Give me an interesting answer. And it is because it goes back to Conrad and the Tenth Circuit case in Conrad. With respect, yes or no? Well, under Conrad, I think, you know, there's a two-part test. One is you look at the motion, what it's called, and you're saying under that first prong of Conrad. We demand arbitration. Then there is no way to analyze it. So I think that you go to the second prong of Conrad, and that says, you look at the essential attributes of the motion. And I think that's what you do in that case. You look at the essential attributes of the motion. Does this motion really seek relief under the FAA? Or does this motion seek relief under the state statute? I think that's how you resolve it. Now, in this case, how would you, I'll get back to my original question. In this case, had they been silent, would we have jurisdiction? No, because you look at the essential attributes. And the essential attributes in this case is that they were, they proceeded under state law, the California Arbitration Act, 100%. Everything they said in their motion referred to California arbitration. But I'm assuming the motion was silent. That's where I'm having some difficulty. So let's assume they just filed the motion and said, we want arbitration. We want arbitration. We're not telling you under which act we're seeking it. Would this be one where we would have jurisdiction? So under your hypothetical, you can't really answer the first prong or the second prong in Conrad. And then a district judge is sitting there and there's been a request for arbitration. And he needs, the district judge needs to decide, okay, how am I going to analyze this? No, no, the district judge analyzes it about whether or not you're entitled to arbitration under the terms of the contract. The district judge makes a decision, correct or incorrect. It now comes up to us. There's a notice of appeal. And the question is, do we have jurisdiction under the Federal Arbitration Act, under those circumstances, where the movement was entirely silent about whether he was seeking a relief under state or federal law? So what I do, if I'm the judge, the district judge sitting there, what I do is I say- No, no, no, wait a minute. The district judge has no decision as to whether or not we have appellate jurisdiction. The district judge, for whatever reason, grants or denies the motion. It now comes to us. And that's the entire record. So you don't get to make up more facts. Okay, okay. We're trying to figure out if we have jurisdiction. Do we have jurisdiction or not? The answer is, if you determine, if the Ninth Circuit determines that the FAA can apply because there's interstate commerce, the answer is yes. Okay. Well, I think you first have to determine that there's interstate commerce, because if there isn't interstate commerce, the FAA can't apply. Now, I don't want to use up too much of your time, but let me go to the next question, because this is the important one to me. Let's assume they move under the California acts, but they don't disclaim why it's unfavorable. And the judge turns them down and they appeal to us. And both of the problems of Conrad are manifielded. Do we have jurisdiction? Under that hypothetical, I think it's uncertain. I don't know. What is your response to the argument that regardless, we should consider whether a petition for mandamus should be entertained as an alternative reading of their request for relief from this court? I just don't think that it helps advance the cause, because I think before the district court, there had been discussions about how this case could get resolved to a final judgment. And the discussions among counsel and the judge were by way of a summary judgment motion. And in those discussions, everyone agreed. And I think the district judge wrote in one of the footnotes in his order, denying the motion to compel arbitration, that the parties believed that a summary judgment could lead to a final decision in the case. So let's assume that happened. You'd appeal. Somebody'd appeal. Right. Presumably your opponent, because the judge is so intent on where it was going. And then two years later, we'd be back in front of the three of us, making the same arguments on the merits of the arbitration order that are being urged to us today. So put aside whether or not, how we can get there, wouldn't it be better to get an answer today with the three of us, rather than waiting two years to see if we still remember your case? No, I don't think so. Because in the record right now, there really wasn't the submission of evidence that way there would be a connection with a motion for summary judgment. So when the motions for summary judgment are filed, there's going to be evidence submitted. And it's going to be more evidence. And we don't know. I think when counsel and the district judge had talked about this, I think there was an assumption that perhaps there won't be a question of fact. But we don't know that. There's all this evidence that's going to be submitted, and there may be a question of fact arising out of that. In this punitive contract, there apparently is a clause that says that any disputes shall be submitted to arbitration. Is that correct? Correct. What arbitration? Where and under what circumstances? Does it invoke the Federal Arbitration Act provisions? Does it mention federal arbitration? Tell us about that. No. And the significance of that, the significance of the specific arbitration provision in this case, is that it specifically says that the California Arbitration Act will dictate whether this is subject to arbitration. All right. So it basically disclaims the federal act in favor of the California Act. Right. And the significance of that is that if the appellant were able to prove that contract, that contract clearly says the California Arbitration Act applies to whether there is arbitration and whether there's going to be a stay to arbitration. It specifically says that. And so they can't have, you can't have jurisdiction by way of the interlocutory appeal because of that. Even if the appellant got everything they wanted, then you wouldn't have jurisdiction on an interlocutory appeal. Can you address the sections, what it would be, of the contract? Does it apply to this kind of dispute? That's the request for repairs. Request for repairs. Oh, yeah, yeah. And it clearly is, there's not repairs. It's you or other action. I don't even need to look at it because the answer is no, it does not. And it doesn't because that provision doesn't say anything about what property is included and is not included in the contract. It talks about property that is part of the contract. There's no dispute over that issue. The dispute is, okay, if there's a contract, what property is included or what property is excluded? But then that paragraph has nothing to do with that. There are two versions of this, of this situation that are submitted to us. Your version and your colleague's version. And his version is, look, the parties had agreed on a contract. A contract had been formed. A contract existed. The consideration had been agreed upon. The only thing that had been left for the resolution by the parties was the matter of personal property. What would happen and what did not. And then the contract clearly provided the mechanism for resolution of any disputes on that point. He tells us that the list exchange you made, he doesn't say that we're not in good faith, but that they were so extreme that the parties disagreed to a point of $500,000 and that, given that dispute, the matter should have been resolved under the terms of the contract. What is your answer to those barren arguments? My answer is when you look at the facts that we've laid out and I think the district court in its statement of the facts in the order denying the motion to compel really lays out the facts very accurately. But when you look at the record that we've submitted on the facts, that is not borne out. And it isn't borne out because of the emails that went back and forth that are part of that. And the emails between the appellants, it's before at the time they say a contract was made and then for several days after because several days after the parties are exchanging information about this various personal property. And when you look at that, including those emails, it's very clear that there was no meeting of the mind, both the emails by the appellant's agent and the emails by the appellee's agent show that there was no meeting of the mind. And I think that's very clear. And that shows that that's not the case. And I won't go into the details, but we've laid it out. A lot of that is laid out in the district court's statement of the facts as well. Okay. Let me get back to the supplemental briefing on your jurisdiction. I had laid out why we think that KCOM applies. And it applies, and the best it's advised for. Well, why I think that you should rely on that finding that you do not have jurisdiction. And the other two cases, American or Airborne Express. How long have you been taking attention to these two cases? From time to time. The Airborne Express and Sherwood cases, I didn't pay as much attention to those as I did KCOM. I spent most of my time on KCOM. Airborne Express and Sherwood, I think are interesting though because they really show kind of an application of that two-prong test in Conrad. They don't really talk about it, but they both do the same thing. They reach a different result, but they're both consistent with that Conrad two-prong test. In Airborne Express, the moving party moved for arbitration under both the FAA and under Washington law. And the Third Circuit said, well, we think we have jurisdiction of this appeal because even though the exemption means that the FAA doesn't apply, the moving party had sought arbitration under the FAA. So you have Perry versus Schwarzenegger, right? The third factor is a clear error is lacking, but that factor becomes dispositive as the Ninth Circuit case ended. My court judge heard what it was, and his first question is, why is what the district court decided a clear error from your perspective, not from opposing counsel's perspective? Well, I don't think it was. I think the district court's decision was correct. I think it was correct. Totally agree. Yes. In the Sherwood case, which is the Seventh Circuit case, the court said that there was no jurisdiction, but that's where the moving party had sought arbitration under Illinois arbitration statute only. And so I think those two cases are consistent with the Conrad test. In our supplemental briefing, I had a very unclear and I think incorrect statement of the holding in Airborne Express. And so I'm going to file a letter that withdraws that because it's just inaccurate, and I don't want you to rely on that. You may do that if your time has expired. Thank you. Mr. Shockley, I'll give you a minute to rebut. Thank you, Your Honor. Let me suggest a basis on which this court can, I think, readily find that the district court engaged in clear and literal error On May 12th, 2014, Kumtah made an offer to purchase this property. On May 21st, Lindenox counter-offered. On May 25th, Kumtah responded with its own counter-offer. On May 27th, Lindenox accepted that counter-offer, thereby forming a contract for the sale of this property for $41 million, including a defined categories of personal property, all artwork and all personal accessories to be excluded, all furniture and all decorative items to be included, subject to Kumtah's approval of an actual list of that property. Kumtah thereby had the right to ratify this contract up until the very end when it chose not to. 50 years of Supreme Court jurisprudence teaches that where a party has the right to ratify a contract, that contract is voidable, and a voidable contract must be sent to the arbitrator. It is not for the district court to decide the validity of a voidable contract. That's the holding of the court in Paymont Paint. That was the holding of the court in Bagai, Chuck Cashin v. Cadenya, and all of the holdings in between. This was a voidable contract, not a contract that was void ab initio, was not attacked on any of the making grounds that are set out in Fresnel 1 in Bagai, or in the court's decisions in Sanford or Three Rivers. In all of those cases, the issue was whether the signatories had authority to sign it, or whether it was in fact even signed in Sanford. None of those issues appear here. So to say that there is no contract, well that's fine, but that's a decision for the arbitrator under Paymont Paint through Bagai. Thank you. Thank you, Your Honor. The case just argued is submitted, and we appreciate very much the arguments from both counsel.
judges: Lucero, Graber, Hurwitz